Calls Harris v. Union County Ambulance 5-11-109. Mr. Womack, you may proceed. It's very glad to see someone I haven't seen for a while. That's the extent of my experience. This is an interesting case. It's here on summary judgment against me by Judge Clark. You guys know he's a good judge, good guy. I made a mistake in this case, in my humble opinion. I have three points I need to make. The first of which is we need to get rid of the energy department. I'm going to forget that one and have it come back later on. This won't come as a surprise, but I'm having a little trouble hearing you, Mr. Womack. We need to get rid of the energy department. Rick, last night, forgot that one. He had three parts he was going to cut and couldn't remember them, so I want to get that one out. The most important issue here in this case is how the case was tried. The attorney for the defense, Al, is a good person, a good lawyer, and doesn't have to engage the kind of tactics that we're engaged in here. The practice of law is difficult. There are pressures on everybody to do certain things. But that pressure will be there and require defense lawyers to do what Al did in this case. As long as this court allows it and encourages it. We started out in this case with before the lawsuit was filed, the insurance carrier voluntarily paid some of the medical bills. The case proceeds when you request to admit the reasonableness and genuineness of those bills. The case never goes through trial. Excuse me, Mr. Womack. Can we kick off the fan? Is that doable? It's blowing right behind me here and it's making it difficult for me. All right, go ahead, Mr. Womack. Well, we got the timer off while we took a break there, so okay, go ahead. If I use the 20 minutes, Judge, you'll have to carry me out of here. The case is four suits filed, voluntary payment of medical bills. Suits filed, denial of liability, denial of damages, all that kind of stuff. That happens. That happens in every case. Case proceeds, we do a request to admit the necessity of the care, reasonableness of the charges, no admission, done. Litigate that issue until heck freezes over. Position all the time is not reasonable, not connected. Finally, at the second, this case has had a story pass. At the second trial, counsel did admit the bills were related, but not until that time. And all the while that's happening, we have all these other, we have mediation when people don't come, don't show up. We have all these other things that are happening. You can look at the judge's order, there were sanctions imposed more than in any case I've ever seen before. But the issue about the bills is significant because And that's really the only issue that you're up on appeal on, right? Yeah, yeah. It's a set off issue. Yeah, yeah. And what's important about that is that even as of the date that the verdict was entered, at the second trial, the verdict is returned. Even as of that date, the defense did not know the amount of the bills or to whom they had been paid. And told the court they'd have to provide that later on. There's something I want to address early on if I can, and that's in Judge Thurston's notes, docket entry, about conceding the motion. I'm not sure what that means. I'm not sure what he meant by that at that time. But at the time that happened, there was no motion. The motion was set off, but no motion 74 would have been paid to whom any of that kind of stuff had ever happened. That was not done until after verdict was entered. So what you're telling us is you wouldn't concede a blank check. Probably not, Judge. With you I would concede, but not to some of the people. And that's kind of what the case is all about. The Thornton decision says that you can't have, and the case law says you can't have relief without pleadings. There were no pleadings in the record anywhere. And the defense acts like they couldn't have pleaded, it was impossible to plead. The law allows you to plead in the alternative, allows for orders in limine about what happened. I mean, I believe the reason they didn't want to plead the counterclaim or the request was set up early on was because they were still denying that the bills were necessary and the charge was reasonable. But you can admit that and ask for an order in limine. The law is clear that that's not admissible on the issue of liability. But what you can't do is say that the bills are not reasonable, the charge is not reasonable, the care is not necessary, while you plead. I mean, Judge Clark used the word of disingenuous. The more accurate word is just plain out fraud. You can't say something that you know is not true for your benefit. You say something you know is not true at the time you say it for your benefit. That's the old-fashioned word for that is fraud. So Thornton says you have to have pleadings before you have relief. There were no pleadings. If you get to the end of Thornton, it talks about the unjust enrichment. Now, I'm not sure we're here on an unjust enrichment claim. In one of the arguments below, I think it's in some place in the transcript, the defense lawyer said this is not an unjust enrichment claim. We paid the medical bills. We want credit for what we paid back. That's great, except you have to have some theory as to why that is true. Unjust enrichment is what they now are claiming gives them the basis for relief. Unjust enrichment is equitable, equitable relief. The clean hands doctrine may be old, but it still applies. Equitable stockholding is old. It still applies. You can't take inconsistent positions in the same lawsuit for your benefit. You can't come into court and seek equity without having clean hands. And you can't commit fraud on part of the claim and then say I didn't mean that. I take all that back and now I want to be compensated for what I've done. So we're down to whether they can make a claim or set off. Under equitable theories, they should not be allowed to do so. But if you allow the claim, then if you allow it to be considered, you've got to consider whether the elements have been proven. The Thornton case and the cases before that by the Supreme Court hold two different types of claims for set off. And this one doesn't fit the first criteria, which is a third party settlement. If you probably didn't notice, I did. The Supreme Court in Thornton effectively reversed this court's decision, trial court, the appellate court's decision, and Patent and Loan got the patent case. Their decision there was different than what it was in the Supreme Court. But there was no settlement here. There was no third party. This is voluntary conduct by the defendant in the first place. No third party settlement comes in. So if you look at all of the issues, they pay an amount of money. They didn't plead it until after verdict. They didn't plead the amount until – they didn't plead whether until after verdict. They didn't plead the amount until after verdict. And then they're claiming they're entitled to set off for the entire amount based on Thornton, and they claim they come under the second part there of the same as if they were a settlement, and they don't. It's not a third party settlement, so they have to have a claim of their own. Then you have to look at whether they have a claim of their own, and they do not. What they did – if you give money to somebody or pay a bill for somebody voluntarily, there's a presumption of a gift. There are lots of ways to handle that. You can ask – you can prepare – I've seen this done so in case law in trial cases before, where they advance the money and ask you to acknowledge that they've advanced the money and want credit for it given when there is a settlement. No obligation to pay it back unless the case is settled. Credit for it when settled. This was not done. It was done unilaterally on their part without any contract of any kind. If the plaintiffs would have got zero – Sorry? If the plaintiffs would have got zero, they would have been under no obligation to pay any money back. I don't know if that's true. I don't know if that's true under their theory here. They're claiming they paid it for their benefit. They still would have a right to go against them because they didn't – there isn't any more indication in this record that plaintiffs would not have any obligation to pay it back as there would be to the contrary that they still did collect the money. We've paid the benefit for you, and since we weren't responsible for it, they could have easily claimed now we're entitled to get it back. I mean this goes on your volunteer claim though. I agree. I mean there's no evidence that there was any strings at all attached to these payments. The point I was attempting to make, and not very artfully apparently, is that there wasn't any agreement in advance, and there wasn't anything binding them. If there had been a zero, they could have said, see, we told you we didn't have any debt, any liability, so now you have to pay us what we paid for your remittance. I think that's consistent with the position they're taking here. But there has to be – the elements of unjust enrichment have to be met. There has to be wrongful conduct on the part of the person that encouraged them to give them money. That doesn't exist. Our people didn't do anything, and it's not alleged that they did anything to encourage them to pay the money. And then you have to have a benefit, and there's no indication at all, and there's no indication in front of Mark that there was a benefit. He presumed there was because they paid the bills, but the allegations in our counterclaim or whatever it was we filed in response to their documents showed that they had car insurance with MedBay and health insurance, both Jeff through his employment with the state, which may or may not have – back then they were paying bills, so they had coverage back then. They had health insurance through the state, and then Mrs. Harris had health insurance through her job. Then it says, well, if that's true, then they probably had a right to recover what they had paid, and they may have, but you don't know that. The record doesn't show that. It doesn't show us either way. The policies are not – No, no. It's alleged that they had it, and that's not disputed. Well, but I mean the policies as to whether or not there was any claim for reimbursement or anything. There was no proof on that one way or the other. But what we do know under the law is that the least that could be said would be they would have to pay prorated costs and expenses, and they'd have to pay the common fund dollar. So it's not going to be $65,000, no matter what the facts are. It's not going to be $65,000. Because if the insurance companies had paid it, then I would have to reimburse them if they had a clause that allowed that, but only under what the statute says about it. And you might have an opportunity to negotiate the amount of the lien or whatever. Al is a good person. He and I are friends. I don't like – and he probably figured that out a long time ago how this case was tried. I wasn't very subtle about it. I don't think that kind of conduct should be encouraged. I don't think you can ignore that kind of conduct and try to determine whether or not equity should be applicable here. I think under the – if you get to the issue of set-off, I think Thornton says it doesn't fit that that category doesn't apply. I don't think you should get there because I think you should uphold the doctrines of clean hands. We're talking about aiding the volunteer. No basis for that. We're talking about clean hands. We're talking about equitable – all solid, equitable doctrines that still exist, still apply and should apply in this case. He said if we didn't use our 20 minutes, we got penalized. He wears a gun. Sir, you may proceed if it's possible. Mr. Womack and I had two highly contested trials in this matter, and I do respect him as an attorney, and I don't necessarily agree with – this is like Harry Reid and Mitch McConnell talking about what good friends they are on the Senate floor. I don't necessarily agree with his rendition of how the trial went off, but I think Mr. Womack has done a good job in trying to confuse the issue, but it's really a pretty simple issue. The issue is were there funds paid for medical bills that were put on a board and the jury was asked to reimburse or pay, and the jury returned a verdict for $125,000 for medical bills, of which the $65,000 plus that my clients, the Southern Illinois County Insurance Trust, paid were part of that $125,000. So the jury awarded not $125,000 minus $65,000. They awarded $125,000. We paid that $65,000 plus, and we're entitled to a set-off. Thornton and Garcini, Mr. Womack, when he first filed an objection to the set-off was when that opinion first came out, and Mr. Womack is good about reading advance sheets, and that first opinion said you had to file the claim before the verdict. The Thornton case was then modified to distinguish between something that would have to be a counterclaim and something that is an enforcement action which can be filed after verdict. In this case, it was no surprise to anyone. Mr. Womack and I had talked about the set-off several times, and actually there was a motion filed in the original case for set-off that was never heard. It was just acknowledged by Mr. Womack that he understood there was a set-off. You can forget about anything else. The fact is funds were paid by my client for damages that were sustained, medical, specials, and to allow there to not be a set-off would be a double recovery for the plaintiffs. Now, we couldn't tell the jury we paid $65,000 for those medical bills. We wouldn't be allowed to. That would be improper. It's a collateral source. But on the other hand, that's why we're allowed to ask for those back at the end of trial. If you pay them, is it a collateral source? I think it is. I think it's a collateral source as long as it's not the plaintiff paying. Any other person who pays them, whether it's a health insurance company, MedPay, whatever. Does it make any difference that in Thornton it was a third-party settlement? You had another defendant who settled. Yeah. I mean, that's a different story. Basically, in Thornton, they said that was something that even though it was an enforcement action, because it was a separate settlement, it was not a set-off. They allowed the claim to proceed as a set-off for purposes of they didn't blame anything by not finding a counterclaim or something prior to the verdict. But it was a different situation. There's no question. Because that was a settlement with a separate party here. Joint tort fees. Right. Exactly. Well, actually, I don't know that they were joint tort fees. If you look at the restatement of torts, Section 923, it gives, you know, this is where we talk about the voluntary penitent doctrine or whatever. And on page 5 of my brief, I set forth that if you even have ‑‑ it's not a voluntary payment if you feel as though there could be liability against you and you're paying for damages that could be imposed against you. And that's clearly the case. There's an illustration of three under Section 923 of the Restatement of Torts. It indicates A negligently injures B who is treated by C, a physician. A pays C's charges. B's damages against A are diminished. It's a real clear case. Mr. Wall makes a great lawyer, and he's put in all these equitable claims and voluntary payments. The fact is we paid $65,000 in the medical specials. The jury awarded $125,000, which included that $65,000, and we're entitled to setoff. Let me ask a question about that, because I haven't seen the record. I did get a copy of the verdict forms that shows the $125,000. But what did the plaintiff put in as far as their medical bills? And my question is, is it clear from the record that these exact same bills that you claimed as setoff were submitted to the jury? Yes. Same date, same providers? Yes. Okay. In fact, we provided proof for a hearing after the trial as to cancel checks, the bills, and what they paid. I know sometimes people stipulate a summary or whatever. And, you know, the jury gave the $125,000 of bills. It would be no different than if I get in an auto accident, I hit someone from the rear. They want me to pay for their bumper, but they said their front bumper was damaged, too. And I said, well, no, it wasn't. So I pay for the rear bumper. It's repaired. They sue me because it costs $2,000 to fix their car, but I already paid $1,000 to fix the rear bumper. They're going to get a setoff. No different in this case. We didn't think the damages were to the extent. The fact that we were sanctioned by the court for not – we didn't deny that the bills were related, but we questioned. For instance, there was a claim of plantar fasciitis caused by the accident. Well, most of the time plantar fasciitis is not caused by trauma. So we neither admitted nor denied it. And perhaps we shouldn't have done that. Perhaps we should have admitted. But just because we paid the bills doesn't mean that we have to admit everything. You can have alternative forms of pleading or inconsistent pleadings, actually, whether you're planning for it or not. And that's just smoke and mirrors energy. The bottom line becomes, are we entitled to a setoff or not? It's a pretty simple issue, really. And that's really all I have unless you have more questions. Okay, thank you. Thank you. Rebuttal? And that's why we're here. The defense position below the position that apparently Judge Clark bought was we paid the medical bills. We're entitled to a full credit for that for setoff. But there's no pleadings and there's no theory of law that allows that to happen. The voluntary payment is presumed to be a gift. There was no agreement for credit that was made there. This is not that the case specifically talks about third parties. It says in the excluding section, we reject the argument about the patent. Because it involved the defendant who was not a part of the case underlying the settlement, unlike the defendant here. And then it goes on to say, according to we hold that the trial court properly denied the defendant's request for relief, no independent judicial determination of the proper allocation is possible. And that's exactly what you have here. There is a claim. They say we pay money, we want it back, that's the end of the argument. And yet they ignore the equitable issues, which I don't think you should ignore. But even if you ignore those, you get just to the issue. Did they plead the elements necessary for unjust enrichment? The answer is no. And did they prove the elements for unjust enrichment? And the answer is no. There's no indication that Jeff did anything to encourage them to make those payments, anything at all, let alone wrongful conduct. And then the other thing is there's no evidence before the trial court, no evidence here, as to whether they benefited, and if so, how they benefited. It is undisputed in the record we know that there was other insurance present, health insurance and MedPay insurance. There's no question about that. And as I argued in my brief, there's indication that Jeff's insurance carriers may have benefited, but not that he did. And this, we paid it, we want our money back, is a nice, simple argument. It just doesn't happen to be based on the law of Illinois. Unjust enrichment has to have those elements there, and they're not there. As a matter of policy, we don't want insurance companies paying these medical bills after they're insured injure somebody, is it? No. I saw you smile when you tried to say that. No, I think that, but at the same time, I don't want them getting, very honestly, if my people have MedPay and car insurance, I sure as heck don't want to pay them. My job is to get the most I possibly can for my client, not for the insurance carrier, health insurance or other things. And in this situation, if this public policy would have cut $20,000 at least out of their pocket, and there's no public policy that I see anywhere that says we have an obligation to help out the insurance business. But even if we do, Judge, they've got to plead it, and they have to have legal basis for the pleading, and then they have to prove it. There's no pleadings here. They didn't plead the elements required for unjust enrichment. Going back to that case 20 years ago, that Thornton Science filed a Supreme Court on unjust enrichment. I forgot the citations, but I don't have them. Rick Perry moment, I guess. But it's always been an obligation to plead the elements. And I cited two cases where there was no question that the case where the contractor did work at the request of the tenant, not the owner. And the court said the tenant, the owner benefited from that, no question about it. No question about that, but they haven't proven the elements of unjust enrichment. They haven't been proven here. Thank you. All right. Thank you both for your excellent briefs and arguments. Interesting issues in this case. We're going to take this under advisement.